120-0184-WC James Alavizos, Appellant versus the Workers' Compensation Commission, Relco Electric Company, Appalachia. Okay, very good. Mr. Stefani, you may proceed. Hey, good morning. May it please the court, my name is Larry Stefani on behalf of the plaintiff, James Alavizos. This is our appeal of a circuit court decision which affirmed the commission decision of January 4th, 2019, which denied our petitions under Sections 19H and 8A of the Workers' Compensation Act. It's our contention pursuant to this appeal that there's absolutely no evidence to support the commission's decision and that it's against the manifest weight of the amended. The original arbitration hearing was April 28, 2004. At that time, the arbitrator rendered a decision that the right ankle and low back conditions were causally related to a December 1st, 1995, work accident. The arbitrator awarded medical expenses, temporary total disability, and permanency. Regarding the low back, which is the subject of the 19H and 8A petitions, there was an award of 60% body as a whole. The commission affirmed on May 24th, 2007, no further appeal, so that became the final decision. Pursuant to the 8A claim, we're claiming that the plaintiff incurred substantial additional medical expenses involving his low back that are causally related to the work accident, and the bills here are extensive, actually $785,000 plus, it was claimed. Pursuant to the Section 19H petition, there's two problems. Counsel, I think we're familiar with the procedural history, and it's also true that in your case, you have several causal connection opinions supporting the claimant's case, correct? Yes, Your Honor. It's our contention that the commission in denying the claims based on completely ignored two things, and one is the nature of the post, of the condition, post arbitration and the diagnosis, and also the commission completely ignored the medical opinions and evidence regarding causal connection. It's our contention that- But what about the specific reasons the commission, I want to get your impression as to the specific reasons they articulated as to why they denied the petition in addition to the veracity issues. They pointed to a significant undisputed gap in the medical treatment records regarding the claimant. Apparently that the first medical record to address the claimant's low back condition was dated June 29th, 2006, when the claimant presented to Dr. Bennett. So they cited three and a half years had passed between claimant's treatment prior to the What's with that significant gap? Well, they were, yes, the commission was pointed to that as a problem to them. But it's our contention that if you look at the diagnosis post arbitration, there was a surgery that was found to be causally related and necessitated by the accident in the original hearing. That was a diagnosis when treatment resumed in 2006 and seven, as confirmed on a myelogram and CAT scan of November 6th, 2007, was that that same cage from the fusion surgery of February 22nd, 2000, that was found to be causally related was now impinging, extending into the neuroforamen and was compressing the nerve root. And it was this finding that led to the next surgery, which ultimately involved removal and revision of that impinging cage. And that was the beginning of the unfortunate avalanche of additional surgeries and complications which followed. So it's our position that even without expert medical opinion, and even with the time gap, the diagnosis was impingement from a cage that was found to be causally related to the work accident in the initial proceeding of April 28th, 2004, as confirmed by the commission. And also your honor, the defendant had two independent medical exams or section 12 evaluations for doctors chosen by them for purposes of examination and record review. And those doctors, that's Dr. Shanfield and that's Dr. Feinberg. And both of those doctors were, number one, aware of the gap in time and still found causal relationship, their own examining physicians. Let me ask you this, the commission was also troubled by, apparently at some point, the claimant moved to California, is that correct? He did, sir. Yes, your honor. His brother, Dr. Alavizos, acted as his primary care physician, correct? Correct. They were troubled, apparently, by the fact that even though the doctor, his brother, played a significant role in his care, they did not submit any of the doctor's treatment notes in support of the petition. Why was that? Well, the commission was troubled by that, but the doctor, in addition to being a physician, was also his brother, right? And it was just determined that the records that he did have would not be offered. But again, it's our position that if you look at the actual evidence, there is hardware complications, which is a known risk of surgery, that yes, they were diagnosed not until 2007, but there's no evidence whatsoever of an intervening event. And you don't need an lumbar fusion. And also, both of defendants examining physicians, Shanfield and Feinberg, both did not say you had to have some intervening event to sustain that impingement. Let me ask you this, and you alluded to this yourself, that apparently the commission had some serious questions with the claimant's credibility and veracity. And they cited things such as they saw a videotape where the claimant was repeatedly lifting weights well in excess of his medically imposed restrictions. He apparently said that he did not exercise at the gym at all, but later told Dr. Dominguez that he usually exercised. But here's a significant thing that really stands out, and I'd like you to specifically address this. Dr. Dominguez, who was one of the in the parking lot, running around the car, telling his mom how to park the car, and walking fine without any obvious pain or discomfort. However, when he then entered Dr. Dominguez's office, he was limping and walking very slowly. So what do you make of that? And this is the doctor's own observation. Well, what I make of that is the commission obviously found not to be credible. But the one thing that is not a credibility issue is the fact that on that diagnostic test in 2007, it was agreed by all the doctors that that hardware that was used in the February 22nd surgery was impinging. So yes, the commission found the plaintiff not credible, and the whole decision is looking at things like what you referenced about Dr. Dominguez as far as attacking his credibility. But I respectfully submit just because somebody's not credible doesn't mean they're not entitled to benefits. And if you look at the evidence in this case, Your Honor, it's our position, it's overwhelming that he is. Again, you have a final commission decision that a February 22nd, 2000 surgery, which is related and necessitated by the work accident. You have that surgery, which involves placement of ray cages. You have a post-arbitration diagnosis and treatment of hardware complications and impingement from that cage that was found to be causally related. The objective finding on diagnostic tests, and then all of the doctors, including both of the defendants examining physicians, Scheinberg and Feinberg, agree with that diagnosis. And they're aware of the time gap in between treatment because they review the records. They don't state there had to be some intervening event. There's no actual evidence of an intervening event here. Stefani, can I interrupt you for a second? Yes, of course. Is it fair to say that your argument is there is no factual issue on the question of whether this man had a failed surgery vis-a-vis the cage and all the medical and objective tests established that the cage was defective and all the medical expenses and surgeries were related to the repairing of that circumstance with the cage, which had already been found to be causally related in the first? That's correct, Your Honor. That's correct. And then following that initial surgery to remove the impinging cage and repair it, then he had further hardware complications and another surgery. Then there's a real unfortunate sequence of medical complications that happened. He had a dural defect. They call it, I'm going to mispronounce this, I apologize, pseudomeningosally that he had to have another surgery for. He then had a permanent pain pump implanted. Then he had a diagnosis of arachnoiditis, which is a serious condition, a scarring of the fecal sac resulting in back and leg pain and weakness, a permanent condition. And again, so yes, I think you accurately stated my position that despite his credibility issues, granted the commission found them not credible and they point, the whole decision attached his credibility. It can't be disputed that he had hardware complications from a surgery that there was a final commission decision was causally related. And as far as his credibility in the initial hearing, yes, there was credibility issues to the arbitrator and commission where they didn't give him a wage differential. They gave him 60 of a man. There was videotapes of him lifting weights in a gym and restrictions. Nevertheless, there was a finding that that surgery was causally connected and necessitated by the work accident. So you can't revisit that. And then the complications involve that same surgery and hardware impingement from that. There's no actual evidence of an intervening event. And again, importantly, their own, the defendant's own examining physicians, Shanfield and Feinberg reviewed all of it. They reviewed, they reviewed all the records. It's in their report. They knew about the time gap. They did not say you had to have an intervening event to, to sustain the hardware impingement that was ultimately found in 2007. So, so, so yes, he's not credible. Yes. The commission found the decision. What, what is it you were looking for in the 19-H proceedings? What did you want? In the 19-H proceeding, we felt there's, there's significant additional temporary total disability. Okay. Yes. And because there were multiple surgeries and under, under the poor case, which I cited in my brief, it's, it's clear that, that you can get additional temporary total disability. Are you looking for medical? What else? TTD, and also there's evidence that the plaintiff is now permanently totally disabled per doctor. It occurs to me that his total lack of credibility, and he seems to lack credibility, goes to the issue of whether he's totally and permanently disabled. And it also goes to the issue of whether he's capable of, was capable of some form of work. But on the question of whether his medical expenses were recoverable, I'm trying to search this record to find any evidence that the condition, the defective surgery, and the repair of that surgery was not causally related to his work accident based on the original finding. You've got some credibility. But also the, in my reading of the decision, it's our position that the commission did not address what benefits under 19-H would be found. They had causal connections. And so, so the question of whether he's not, he's had nine surgeries altogether, seven since the original arbitration. And again, there's evidence which, which the commission didn't even get to all that because they denied the whole case on cause. So they never addressed additional temporary total disability, which is going to be substantial with, with the additional surgeries. And they also never addressed whether there's a material increase in permanency from the 60 of a man that was awarded. And, and I didn't brief that because I feel that's a factual question. My only, my only purpose of asking the question was to suggest that his lack of credibility does not go to medical expenses. It goes to TTD and increased permanency, but it doesn't go to lack of medical expenses. I'm, I've searched this record and I can't find a single thing in this record that suggests that his medical is not causally related to the failed surgery. The objectives testimony says the objective tests say so, and the doctors say so. Your Honor, I would also argue that, that, that there, there has, there clearly is additional temporary total disability because of the major surgery. That's a matter for you to argue. Not to us. Yeah. Okay. That doesn't affect, if it's found to be causally related, the condition that then clearly the medical flows, at least the commission would have to determine what of that $785,000. And clearly the temporary total disability, if it's found to be causally related, there'd have to be significant periods. The question of whether there's an increase in permanency after seven more surgeries after, after the arbitration, you know, that's a factual question that the commission didn't get to. So, so that's why if it's reversed on cause, I asked for the case to, I respectfully asked the case be remanded. So, cause I, so the commission can address those factual issues. Oh, I'm sorry. I didn't see the light. I'm sorry. You have time and reply. Pardon me? Your time is up. The red light's on. Thank you. Thank you, Your Honor. You may respond. Thank you. May I place the court, uh, counsel. My name is Martin Spiegel. I now represent the employer, Appalachia Relco. Um, in order to reverse a court on a question manifest way to the evidence, you have to show that, or there would have to be a showing of an opposite conclusion must be readily apparent. Mr. Mr. Spiegel, I want to cut to the, I want to cut to the chase. Yes, sir. What is the evidence in this record that the medical expenses that this man incurred in order to repair that failed surgery is not causally related to the underlying work accident. And that's a, uh, a fair question. And I'd be happy to explain that to you. Uh, this is a gentleman who didn't treat for three years. During that period of time, he was lifting weights in excess of 250 pounds. Uh, he was a credit, an incredible person who didn't tell all the doctors what was going on. For instance, when he and Dr. Aflatoon, he told them that it had no improvement since the February, 2000 surgery. Absolutely not true. If you look at the records of Dr. DeFeo from the first hearing in 2004, and specifically on July 2nd, 2001, he told Dr. DeFeo that he was a hundred percent better than he was before the surgery and was doing well. So what, what caused this downward spiral? Then you also have a CT myelogram that was ordered by Dr. DeFeo immediately after that phone call, uh, that was done in July of 2001. It should, uh, there is no mention of the cage encroaching into the foramen. Uh, both Dr. DeFeo and Dr. Coe, uh, Dr. Coe was the expert in the first, uh, hearing for Mr. Stefani's client, uh, said that, I'm sorry, I just lost my place. Uh, said that the fusion was solid, or he thought the fusion was solid. Now Dr. Uh, Coe obviously isn't a neurosurgeon nor an orthopedic surgeon, but you know, we, we, we have two doctors saying it was, it was solid. And then six years later or more, there appears to be a problem with the hardware. Why? Um, one of the things that Dr. Carlson, one of the treating physicians said was that doing squats could dislodge a fusion. Uh, Mr. Alivisos was seen doing, uh, numerous squats as much as 135 pounds on the squat machine in the videos of two, uh, there's three videos in the original hearing 2002 and 2004. And I believe the squats were confined to the 2004, uh, hearing at that point, he's not trading. Uh, there's no evidence of hardware, uh, uh, misalignment. There's no, uh, evidence of nerve compression. So I do think there's quite a bit to, uh, say that the medical is not related. The commission did not. Is there, is there, is there any medical opinion that you put on that said it's not related? Dr. Feinberg judge actually said that his opinion on causation was based upon his belief that there was a legal conclusion that everything was related. Uh, discussed the agreed IME process in California. He's in Palo Alto. He specifically said that he's not saying the deterioration, uh, of Mr. Alivisos condition is not related to the accident. In fact, he said, I'm not even sure that the back is related to the original accident in December of 1995. Dr. Schoenfeld, the, the other expert that was, uh, used before I was involved in this case. Um, he didn't have accurate information. He did not have information about, but that's not my question. My question is, is there any medical opinion in this record that the damage cage or whatever it is, the instrumentality is not causally related to the original operation or his original work accident? Is there any judge? There is no medical opinion. I think it's a reasonable inference that can be drawn from the facts of the case, but there is not a medical opinion. That's correct. Or that's fair. It's a fair answer. Yeah. Um, Mr. Alivisos tells doctors, tells people what he wants them to know. Uh, when I was cross examining him, uh, well, when Mr. Uh, Stephanie, uh, questioned him four times, he said, I don't know where I don't recall when I questioned him 44 times. And he said, I don't know. I don't recall. I don't remember. He even went so far at one point when I said, is it a fair statement that you don't know the names of all the doctors that you've seen and what you told them? And his response was, I don't know. Um, and I think it's, there's no question that this guy is not credible and that he's not trying to system. But the question that I have is, is there any evidence in the record that this medical relating to the failed fusion is not causally related to the operation, which the commission already found was causally related. Yeah. I think there, there is. And that goes back to Dr. Carlson's testimony that the few, uh, the squat, the surgery was in 2000. He was doing squats and working out in a gym to, uh, from 2003, at least 2004. Um, Dr. DeFeo, uh, said that, that the gentleman had noted improvement. Uh, he did in my, there was no evidence of a hardware failure at that point. And that's July, 2001. Um, I, I, you also have Dr. Carlson whose opinion has to be called into question because he's a gentleman who hadn't seen Mr. Alvisos in 260 some odd days yet wrote a, uh, a letter for Mr. Alvisos in May, 2014 saying he's not physically able to come back to Illinois to, uh, testify in the here. Now I submit to you that he's no profit. He's no prognosticator. He had no basis for the opinion. So it's not just the opinions of the providers, but I think when you put the total package together, your honor, that Mr. Alvisos is incredible. The medical records leave open a question of why did the Dr. Carlson, uh, seem to have, uh, paid attention to the July, 2001 myelogram that showed there wasn't a hardware problem. And, uh, I, I believe the commission's, uh, decision that his condition was, uh, not causally related to the, uh, accident that he is incredible. And Dr. Carlson is incredible. And, uh, the sudden resumption of treatment in first draws a reasonable inference that something else has happened. I don't know why they don't have to adopt the medical opinions of the, of these doctors. They looked at the I don't think there is any question from this record that there was a failure of the fusion vis-a-vis the cage and encroachment of metal metal in, into the spine. There's no question about that. The question is what caused it? That's the question. And they drew what appears at least in my opinion, your honor, uh, a reasonable inference that it was due to the squats that he was doing as even admitted by Dr. Carlson. Uh, the fact that he went six years with not six years, I'm sorry, three years, three months without any medical attention, that it was something else that occurred. It doesn't have to relate back to the original surgery. And with the propensity of Mr. LLV, so as to misstate some of the propensity of Dr. Carlson, who seems to be enabling Mr. LLV, so this rather than, uh, uh, helping him, I think it's a reasonable conclusion or reasonable inference for the commission. And because it is a reasonable, uh, inference drawn from all of the facts of the case, I think their decision can't be said to be against the manifest weight of the evidence. And I would, uh, submit that the decision should be affirmed in its entirety. Okay. Okay. Thank you, Mr. Spiegel, Mr. Stefani, you may respond or reply. Thank you, your honor. Um, the weightlifting that Mr. Spiegel referred to that occurred prior to the hearing. There's no evidence of any gym activity after that. And there's certainly no evidence of any intervening events, um, that would cause, uh, the hardware impingement that was found. And as far as the hardware impingement itself that was found in 2007, that can't be disputed that that cage and every doctor agrees was, was impinging and, and causing the compression of and that's what started the avalanche of, of, of, uh, of a horrible, horrible sequence of treatment regarding this low back and other complications. And, and then I, again, I repeat that to examining physicians that reviewed records and actually, uh, Dr. Shampfield reviewed the commission decision. He was aware of the weight lifting. If you read his initial, I think it's March of 2008 report, he actually was provided the commission's initial decision. And both of those positions found a causal relationship. And again, did not state that there had to be some intervening event. It's an evidence that hardware migration is one of the risks of surgery. And it happened, it happened to happen with Mr. Alvizos in 2007, when the surgery was in 2000. It's, but nevertheless, it's still hardware from that surgery where there's a final decision was causally related. So to surmise, as the commission did that, there must be some intervening event. It's pure speculation. It's just, there's simply no evidence of that. Mr. Alvizos certainly was living his life. So, but, but there's no evidence he did it squatting or he did it lifting a weight there, or he did it, uh, you know, when, when an object fell on him, there's just, there's no evidence at all of that. And, uh, so, you know, respectfully submit that despite the fact that, that the commission found him not credible, despite the fact that there were credibility issues in the, in the initial arbitration hearing that the commission in this decision pointed to the arbitrators, certain, uh, you know, the arbitrators opinion back in 2004, nonetheless, the overwhelming evidence, it met all the evidence except to speculate that there's some intervening event supports a causal relationship. So we respectfully submit. And again, it's our position. They didn't address the factual issues of medical bills or temporary total, which, which I respectfully submit are clear should be awarded. And the increase in permanency is another issue is 60 of a man, but it's also a factual issue. I respectfully submit for the commission to determine, um, if, if causal connection is found to exist and, and it's remanded. Thank you. Okay. Well, thank you counsel, both for your arguments in this matter. It will be taken under advisement.